IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDDIE PENLAND | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. AW-05-2688 |
| | | |
| DIRECTOR OF CORRECTIONS FOR | * | |
| MONTGOMERY COUNTY, MARYLAND | | |
| WARDEN OF THE MONTGOMERY | * | |
| COUNTY CORRECTIONAL FACILITY | | |
| (MCCF) | * | |
| PROPERTY CLERK, MCCF | | |
| WARDEN OF THE MONTGOMERY | * | |
| COUNTY DETENTION CENTER (MCDC) | | |
| PROPERTY CLERK CLARK, MCDC | * | |
| Defendants. | | |
| | *** | |

## MEMORANDUM

I.  Procedural History

On September 28, 2005, the Clerk received for filing this "Petition for Emergency Restraining Order" filed by Eddie Penland, an inmate now housed at the Maryland House of Correction ("MHC"). The matter, construed as a 42 U.S.C. § 1983 complaint for emergency injunctive relief, alleged that Plaintiff's legal materials and documents were confiscated by authorities at the Montgomery County Correctional Facility ("MCCF") and/or the Montgomery County Detention Center ("MCDC") and would be subject to destruction within a 30-day period from September 10, 2005.[1]  Plaintiff requested that the papers be returned to him.

---

[1]  According to Plaintiff, he packed up his legal materials when leaving MCCF for MCDC on September 9, 2005, to await transportation by the Division of Correction fugitive squad.  He complains that his property did not accompany him and he was informed by "staff at the county intake" that if his property did not come with him at some point, it would be discarded or destroyed thirty days from September 10, 2005. Paper No. 1.  Plaintiff states that he is homeless and has no family or friends to take custody of the property. *Id.*

Defendants filed their court-ordered Response. Paper No. 5. The court construed their Response as a Motion to Dismiss and directed the Clerk to send Plaintiff notification that the document had been re-characterized as a dispositive motion. Paper No. 8. Plaintiff filed a Motion to Supplement/Complaint, a Response, an Affidavit, and an Addendum.[2] Paper Nos. 7, 10, 11, & 12. The case is ready for this court's consideration and may be determined without oral hearing. *See* Local Rule 105.6. (D. Md. 2004).

II.   Standard of Review

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to particular acts or practices. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). The "case- or-controversy" requirement subsists through all stages of federal judicial proceedings, both trial and appellate. *Id*. Thus, an actual controversy must exist "at all stages of review, not merely at the time the complaint is

---

[2]   Plaintiff also filed a Motion for Copy Work, seeking a copy of his original complaint. Paper No. 6. The Motion shall be granted

filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 1068 (1997) (internal quotation marks and citations omitted).   A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (alterations in original).   Where injunctive relief is requested in a prisoner's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th  Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir.1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief).

III.   Analysis

   In their October 20, 2005 Response, Defendants present the following factual information. While Plaintiff was incarcerated at MCCF serving a State sentence, the Maryland Division of Correction ("DOC") lodged a parole retake warrant as a detainer with MCCF.  Paper No. 5.  On September 9, 2005, Plaintiff completed service of his sentence at MCCF.  The Montgomery County Department of Correction contacted the DOC's Paroke Retake Unit to inquire whether it wished to take custody of Plaintiff based upon the parole detainer.   The Retake Unit indicated that it would assume custody of Plaintiff on the morning of September 10, 2005. *Id.*

   On the evening of September 9, 2005, Plaintiff was released from MCCF, but transported to the Central Processing Unit ("CPU") attached to MCDC, where he was held by Montgomery County staff based upon the issuance of the parole retake warrant.  Plaintiff's articles of personal property, including

3

his legal materials and documents, were transported with him from MCCF to CPU.  *Id*.  Defendants

indicate that when Plaintiff arrived at CPU his legal materials were intermingled with his general articles of

personal property.  *Id*.

On September 10, 2005, members of the DOC fugitive squad arrived at the CPU to take custody

of Plaintiff and to transport him to the Maryland Reception and Diagnostic Center ("MRDCC").  *Id*.  Sgt.

Russell Dorsey of the fugitive squad indicated, however, that the squad would receive and transport

Plaintiff's legal papers and materials with him, but not his articles of general personal property.  *Id*.

Because Plaintiff's legal documents and materials were intermingled with his personal property, Sgt. Dorsey

declined to accept any articles of personal property, including any legal materials, for transport to the DOC.

*Id*.  According to Defendants, when Plaintiff was removed from the CPU to the DOC on the morning of

September 10, 2005, his legal materials and documents remained behind at the CPU.  Later that day,

his property, including his legal materials, were retrieved by MCDC Property Clerk Roger Clark and

placed in MCDC's inmate property storage area for safekeeping.  Paper No. 5.

Defendants allege that on September 16, 2005, Plaintiff wrote to the MCDC Warden seeking

assistance in the safekeeping and return of his legal materials.  *Id*.  MCDC staff subsequently took action

to locate, identify, and separate Plaintiff's legal materials in order to send them to Plaintiff.  DOC personnel

were contacted and, on or about September 30, 2005, MCDC Property Officer James Clinton sent all of

Plaintiff's legal materials and documents to Plaintiff at MRDCC via Federal Express.  *Id*.  The materials

were received at MRDCC on or about October 4, 2005.  Plaintiff had, however, been transferred to MHC

before the materials could be delivered to him.  *Id*.  According to Defendants, the materials were shipped

to Plaintiff at MHC on October 6, 2005.  *Id*.

4

In response, Plaintiff claims that his complaint is not mooted, because he went without his legal materials for more than a month and he has not yet been provided an inventory to confirm that Defendants "have complied with the court order."[3]  Paper No. 7.   Plaintiff further asserts that Defendants' actions caused "harm to all three of his legal matters ongoing."   Paper No. 10.   He alleges that Defendants fail to comprehend the consequences of their actions and seemingly complainslaims that they could have streamlined the mailing process to ensure that his legal documents were returned to him in a more expeditious manner.  *Id*.  Plaintiff claims that: his legal property was organized; contained minimal material; were not intermingled; but if intermingled, could have been separated in a short period of time.[4]  *Id*.

The only relief sought by Plaintiff against Defendants was the return of his property.  There is no dispute that approximately two days after this Petition for Emergency Restraining Order was received for filing, Defendants mailed Plaintiff's legal property to him at the DOC.   Likewise, there is no dispute that the materials were re-shipped to Plaintiff at the MHC on October 6, 2005. The emergency relief sought by Plaintiff has been afforded to him.   Therefore, his Complaint has been rendered moot.

---

[3]    In a subsequent response, Plaintiff claims that he is being subjected to even less legal access and resources by DOC personnel and not having his legal materials "has caused him immediate and future harm." Paper No. 10.

[4]    In his Addendum, Plaintiff acknowledges obtaining access to and review of his legal materials at MHC, but claims that a number of legal documents are missing.   Paper No. 12.

V.     Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss shall be granted and the instant action shall be dismissed.  A separate Order follows.[5]


Date:  November 22, 2005                          /s/
                                         Alexander Williams Jr.
                                         United States District Judge

---

[5]     To the extent that Plaintiff is now raising access-to-courts claims against defendants he is not without recourse.  He is free to file a civil rights complaint for damages against the appropriate parties.  Moreover, if he wishes to raise such claims against Maryland DOC defendants, he may file the appropriate action after exhausting his administrative remedies.